```
CV01-808890              : SUPERIOR COURT

ERROL DUNKLEY           : JUDICIAL DISTRICT OF HARTFORD

VS.                     : AT HARTFORD

THE WARDEN              : AUGUST 1, 2001
```

BEFORE:   THE HONORABLE RICHARD M. RITTENBAND, JUDGE REFEREE

HABEAS CORPUS PROCEEDING

APPEARANCES:

ERROL DUNKLEY
    PRO SE PETITIONER

MADELINE MELCHIONNE, AAG
110 Sherman Street
Hartford, CT 06105
    ATTORNEY FOR THE RESPONDENT

SHARON ROSATO
Licensed Shorthand Reporter

1    (EXCERPT OF PROCEEDINGS OF AUGUST 1, 2001.)
2         THE COURT: Okay. Here's what I am going to do.
3    I am going -- I am ordering a surgical consultation at
4    UConn Health Center ASAP, as soon as possible, with
5    the determination by the surgeon as to whether the
6    benefit of taking it out exceeds the risk. That's up
7    to the surgeon to determine.
8         If he or she looks at it and determines for some
9    reason as Dr. Blanchette has indicated that it might
10   cause you more problems to take it out than to leave
11   it there, that will be up to the surgeon's judgment.
12        As far as whether it is elective, I will say this
13   in advance. If the surgeon feels that it should be
14   taken out, notwithstanding any negative finding of the
15   Utilization and Review Committee, such negative
16   finding of the Utilization and Review Committee is
17   hereby overruled. And if the surgeon feels that the
18   benefit of taking it out exceeds the risk, then the
19   surgery should go forward.
20        MR. DUNKLEY: Your Honor, may I say something,
21   please?
22        THE COURT: Sure.
23        MR. DUNKLEY: In all due respect to your Honor's
24   order, I believe Dr. Blancher would have a hand in
25   this with UConn because --
26        THE COURT: I can't hear you, sir.
27        MR. DUNKLEY: I believe Dr. Blancher --

1           MR. BLANCHETTE:  Blanchette.

2           MR. DUNKLEY:  Blanchette.  -- has a hand with the

3  deciding with this UConn or with dealing with the

4  facility, so my reasoning is that this doctor would

5  deny it, you know, because of the fact that he would

6  tell them to deny it.  I would -- I would think he has

7  a hand in it, you know, naturally.

8           THE COURT:  What evidence do you have of his

9  influence?

10          MR. DUNKLEY:  I have no corroborating evidence to

11 that fact, but it's almost fact that they're going to

12 deny it.  It's almost fact.

13          THE COURT:  Well --

14          MR. BLANCHETTE:  Your Honor, in my defense, let

15 me just assure you and assure the plaintiff that if --

16 I would never try to change the mind of a physician.

17 If he felt that surgery was indicated, by all means.

18 And we have done surgery on some lipomas, and there

19 are other lipomas that have not had surgery

20 performed.  But that decision is purely up to the

21 surgeon.

22          And, frankly, if I suggested that they should not

23 because of some personal feeling or what have you

24 about that, they, most surgeons would be very insulted

25 by that kind of input from myself, so.

26          So I take great exception to these allegations.

27 I have absolutely no role at all in URC nor do I have

1  any role with trying to alter physician's decisions.
2     THE COURT:  Well, I understand that, and my
3  experience with Dr. Blanchette -- and I don't know how
4  long we have been doing this.  March of 2000, I
5  think.  Oh, no.  You testified up in Rockville a few
6  times too.
7     MR. BLANCHETTE:  That's true.
8     THE COURT:  That I have never known him to do
9  anything that you have suggested.  Whenever there's a
10 recommendation for surgery, he's backed it up, and so
11 I have no reason to believe that he in any way would
12 interfere.
13    I can -- what you are saying, Mr. Dunkley, is
14 speculation at this point.  There's no proof of it.
15 And my experience with Dr. Blanchette over the years
16 is that he's a man of integrity and will call them as
17 he sees them but will not try to influence UConn
18 Health Center at all.  There is a contract with UConn
19 Health Center.
20    The only stumbling block there is the Utilization
21 Review Committee, which is like an HMO, and I have the
22 power to overrule them which I have done and which I
23 will do here if they should deny it.
24    So the order is that -- I am being repetitious
25 here -- but that you get a surgical consult regarding
26 the, let's call it a tumor for now or mass on the back
27 of your neck or side of your neck as soon as possible

1    and subject to the evaluation of the surgeon.
2         Again, if the surgeon feels that the benefits
3    outweigh the risks, then he's authorized to do
4    surgery.
5         MS. MELCHIONNE: Your Honor, may I just clarify?
6    As soon as possible from what we heard today may not
7    be until September, Mr. Dunkley. I want to make him
8    aware of that.
9         THE COURT: He's had this for what did you say,
10   four years?
11        MR. DUNKLEY: Yes, sir.
12        THE COURT: It may be September before you get in
13   there. That's next month. But I will tell you
14   something. Your application came in June?
15        MR. DUNKLEY: Yeah, June.
16        THE COURT: I probably didn't get it until
17   about -- I probably didn't get it until July, and
18   since we were doing medical things today anyway, I
19   brought you in a lot sooner than you would have been
20   brought in under the circumstances.
21        MR. DUNKLEY: Certainly appreciate the quick
22   response.
23        THE COURT: We will go ahead with it in September
24   if that's the soonest it can be done. They will
25   advise you -- he's to be advised -- I want this done.
26   He's to be advised of the week the surgical consult
27   will take place.

1   For security reasons they don't give you the
2   exact date.
3       MR. DUNKLEY: All righty.
4       THE COURT: And after the surgical consult, if an
5   operation is scheduled, you're all set. If it's
6   not -- I am not going to ask for a report from the
7   doctor at this point, but if it's not scheduled, you
8   could let me know. And if it's not to be done, I
9   would like something from the doctor as to why it
10  would not be done.
11      I am not talking about the report from an
12  orthopedic surgeon for an automobile accident case. I
13  am talking about maybe a couple paragraphs, whatever
14  it is, be sent to the Court and I suppose sent to the
15  petitioner and Dr. Blanchette.
16      MR. DUNKLEY: Well, excuse me, your Honor. May I
17  interject my new address for the court purposes?
18      THE COURT: Okay. Could you speak up a little?
19      MR. DUNKLEY: May I interject my new address for
20  court purposes, because I don't believe I had an
21  opportunity to write the court and tell them my new
22  address as to where I am located in the facility as
23  now.
24      THE COURT: Go ahead.
25      MR. DUNKLEY: My new address is Enfield CI,
26  Enfield, Connecticut, Enfield Correctional Institute.
27      And there also is a major problem there with me

1   and my legal work.  That's why I have no documents
2   here with me.  The property officer refused to give me
3   my legal documentation.
4         I have 14 ongoing cases in Connecticut that I'm
5   personally representing myself and, including this
6   one, and they have totally refused to give me all my
7   legal paperworks.  And so, therefore, that's why I am
8   not prepared.
9         THE COURT:  Well, you don't have to be prepared
10  any further for this case.
11        MR. DUNKLEY:  Right.  I am quite understanding of
12  that, but.
13        THE COURT:  Well --
14        MS. MELCHIONNE:  Your Honor, he just -- sorry.
15        THE COURT:  Pardon me?
16        MS. MELCHIONNE:  He just transferred to Enfield
17  within the last week.  It's not uncommon for it to
18  take several days for property to catch up with an
19  individual.
20        If he does in fact have 14 cases, I would imagine
21  that constitutes several boxes, and there is a limit
22  to the amount of personal property, whether it be hair
23  brushes, toothbrushes, toothpaste, or legal work or
24  books or what have you that an inmate can keep in
25  their cell for safety reasons or fire hazard at any
26  given time.
27        THE COURT:  Well, can we do this?  Can the

1  because of this situation. Since I went to
2  MacDougall, that's when he put me on a year-long
3  Motrin of 600 milligrams, but I have been on 400
4  milligrams all through Garner since that incident
5  happened.
6      I am tired of taking Motrins for this problem,
7  your Honor. And the doctor told me when I got to my
8  new facility that I'm at at this present time --
9      THE COURT: Where are you now?
10     MR. DUNKLEY: I am at Enfield Correctional
11 Facility.
12     When the doctor at MacDougall called me and was
13 talking to me, a week later I was shipped out. I was
14 shipped out of MacDougall Correctional Institute. And
15 this problem has been going on and it has been
16 bothering me and I get a tremendous amount of
17 headaches all the time because of this problem. I
18 never had this problem before.
19     This problem exists -- this problem was caused by
20 a state official, a state employee, worker, and it's
21 more than irritating, your Honor. It's causing me
22 physical --
23     THE COURT: Okay. Here's what I am going to do.
24 I am going -- I am ordering a surgical consultation at
25 UConn Health Center ASAP, as soon as possible, with
26 the determination by the surgeon as to whether the
27 benefit of taking it out exceeds the risk. That's up

1   to the surgeon to determine.

2   　　　If he or she looks at it and determines for some
3   reason as Dr. Blanchette has indicated that it might
4   cause you more problems to take it out than to leave
5   it there, that will be up to the surgeon's judgment.

6   　　　As far as whether it is elective, I will say this
7   in advance. If the surgeon feels that it should be
8   taken out, notwithstanding any negative finding of the
9   Utilization and Review Committee, such negative
10  finding of the Utilization and Review Committee is
11  hereby overruled. And if the surgeon feels that the
12  benefit of taking it out exceeds the risk, then the
13  surgery should go forward.

14  　　　MR. DUNKLEY:  Your Honor, may I say something,
15  please?

16  　　　THE COURT:  Sure.

17  　　　MR. DUNKLEY:  In all due respect to your Honor's
18  order, I believe Dr. Blancher would have a hand in
19  this with UConn because --

20  　　　THE COURT:  I can't hear you, sir.

21  　　　MR. DUNKLEY:  I believe Dr. Blancher --

22  　　　MR. BLANCHETTE:  Blanchette.

23  　　　MR. DUNKLEY:  Blanchette.  -- has a hand with the
24  deciding with this UConn or with dealing with the
25  facility, so my reasoning is that this doctor would
26  deny it, you know, because of the fact that he would
27  tell them to deny it. I would -- I would think he has

1   a hand in it, you know, naturally.

2       THE COURT: What evidence do you have of his

3   influence?

4       MR. DUNKLEY: I have no corroborating evidence to

5   that fact, but it's almost fact that they're going to

6   deny it. It's almost fact.

7       THE COURT: Well --

8       MR. BLANCHETTE: Your Honor, in my defense, let

9   me just assure you and assure the plaintiff that if --

10  I would never try to change the mind of a physician.

11  If he felt that surgery was indicated, by all means.

12  And we have done surgery on some lipomas, and there

13  are other lipomas that have not had surgery

14  performed. But that decision is purely up to the

15  surgeon.

16      And, frankly, if I suggested that they should not

17  because of some personal feeling or what have you

18  about that, they, most surgeons would be very insulted

19  by that kind of input from myself, so.

20      So I take great exception to these allegations.

21  I have absolutely no role at all in URC nor do I have

22  any role with trying to alter physician's decisions.

23      THE COURT: Well, I understand that, and my

24  experience with Dr. Blanchette -- and I don't know how

25  long we have been doing this. March of 2000, I

26  think. Oh, no. You testified up in Rockville a few

27  times too.

1  MR. BLANCHETTE: That's true.

2  THE COURT: That I have never known him to do
3  anything that you have suggested. Whenever there's a
4  recommendation for surgery, he's backed it up, and so
5  I have no reason to believe that he in any way would
6  interfere.

7  I can -- what you are saying, Mr. Dunkley, is
8  speculation at this point. There's no proof of it.
9  And my experience with Dr. Blanchette over the years
10 is that he's a man of integrity and will call them as
11 he sees them but will not try to influence UConn
12 Health Center at all. There is a contract with UConn
13 Health Center.

14 The only stumbling block there is the Utilization
15 Review Committee, which is like an HMO, and I have the
16 power to overrule them which I have done and which I
17 will do here if they should deny it.

18 So the order is that -- I am being repetitious
19 here -- but that you get a surgical consult regarding
20 the, let's call it a tumor for now or mass on the back
21 of your neck or side of your neck as soon as possible
22 and subject to the evaluation of the surgeon.

23 Again, if the surgeon feels that the benefits
24 outweigh the risks, then he's authorized to do
25 surgery.

26 MS. MELCHIONNE: Your Honor, may I just clarify?
27 As soon as possible from what we heard today may not

```
 1    be until September, Mr. Dunkley.  I want to make him
 2    aware of that.
 3         THE COURT:  He's had this for what did you say,
 4    four years?
 5         MR. DUNKLEY:  Yes, sir.
 6         THE COURT:  It may be September before you get in
 7    there.  That's next month.  But I will tell you
 8    something.  Your application came in June?
 9         MR. DUNKLEY:  Yeah, June.
10         THE COURT:  I probably didn't get it until
11    about -- I probably didn't get it until July, and
12    since we were doing medical things today anyway, I
13    brought you in a lot sooner than you would have been
14    brought in under the circumstances.
15         MR. DUNKLEY:  Certainly appreciate the quick
16    response.
17         THE COURT:  We will go ahead with it in September
18    if that's the soonest it can be done.  They will
19    advise you -- he's to be advised -- I want this done.
20    He's to be advised of the week the surgical consult
21    will take place.
22         For security reasons they don't give you the
23    exact date.
24         MR. DUNKLEY:  All righty.
25         THE COURT:  And after the surgical consult, if an
26    operation is scheduled, you're all set.  If it's
27    not -- I am not going to ask for a report from the
```

```
 1   doctor at this point, but if it's not scheduled, you
 2   could let me know.  And if it's not to be done, I
 3   would like something from the doctor as to why it
 4   would not be done.
 5       I am not talking about the report from an
 6   orthopedic surgeon for an automobile accident case.  I
 7   am talking about maybe a couple paragraphs, whatever
 8   it is, be sent to the Court and I suppose sent to the
 9   petitioner and Dr. Blanchette.
10       MR. DUNKLEY:  Well, excuse me, your Honor.  May I
11   interject my new address for the court purposes?
12       THE COURT:  Okay.  Could you speak up a little?
13       MR. DUNKLEY:  May I interject my new address for
14   court purposes, because I don't believe I had an
15   opportunity to write the court and tell them my new
16   address as to where I am located in the facility as
17   now.
18       THE COURT:  Go ahead.
19       MR. DUNKLEY:  My new address is Enfield CI,
20   Enfield, Connecticut, Enfield Correctional Institute.
21       And there also is a major problem there with me
22   and my legal work.  That's why I have no documents
23   here with me.  The property officer refused to give me
24   my legal documentation.
25       I have 14 ongoing cases in Connecticut that I'm
26   personally representing myself and, including this
27   one, and they have totally refused to give me all my
```

1  legal paperworks. And so, therefore, that's why I am
2  not prepared.
3      THE COURT: Well, you don't have to be prepared
4  any further for this case.
5      MR. DUNKLEY: Right. I am quite understanding of
6  that, but.
7      THE COURT: Well --
8      MS. MELCHIONNE: Your Honor, he just -- sorry.
9      THE COURT: Pardon me?
10     MS. MELCHIONNE: He just transferred to Enfield
11 within the last week. It's not uncommon for it to
12 take several days for property to catch up with an
13 individual.
14     If he does in fact have 14 cases, I would imagine
15 that constitutes several boxes, and there is a limit
16 to the amount of personal property, whether it be hair
17 brushes, toothbrushes, toothpaste, or legal work or
18 books or what have you that an inmate can keep in
19 their cell for safety reasons or fire hazard at any
20 given time.
21     THE COURT: Well, can we do this? Can the
22 property manager be advised that if he requests a
23 particular file because he's got 14 lawsuits -- you
24 are going to have to distinguish which one you want.
25 You can't get them all at the same time -- what he
26 requests he be given?
27     MS. MELCHIONNE: What the procedure is if there's

too many boxes to be in the inmate's cell at the same time, sometimes the inmate can show the warden or someone in charge he has all of these cases pending at the same time and they're coming up in the near future, they will often make an accommodation for the inmate to keep excess property in the storage room and he can exchange them on a one for one basis as he needs them.

THE COURT: Can you notify Enfield to do this as soon as they get it?

MS. MELCHIONNE: Sure, your Honor.

THE COURT: Anything else?

MR. DUNKLEY: Thank you, your Honor. I greatly appreciate it. Thank you.

THE COURT: You're welcome.

(End of proceeding.)

(End of excerpt.)

ERROL DUNKLEY V. THE WARDEN

## CERTIFICATION

I hereby certify that the foregoing is a true and accurate transcript in the aforementioned matter, heard before the Honorable Richard M. Rittenband, in the Hartford Superior Court at Hartford, Connecticut on the 1st day of August 2001.

Dated at Hartford, Connecticut this 13th day of January 2002

_____
Sharon Rosato
Licensed Shorthand Reporter