UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERROL I. DUNKLEY                    :
                                    :        PRISONER
        v.                          :        Case No. 3:01cv2007(CFD)
                                    :
CORRECTIONAL OFFICER RODWELL,       :
WARDEN REMI ACOSTA                  :

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Errol I. Dunkley ("Dunkley"), was incarcerated at the State of Connecticut

Enfield Correctional Institution in Enfield, Connecticut ("Enfield") at the time of the incidents

alleged in his complaint.  He filed this action pro se and in forma pauperis pursuant to 42 U.S. C.

§ 1983.  He alleges that defendant Dwayne Rodwell, a Corrections Officer at Enfield, denied him

access to his legal materials and also lost or took items of his personal property. He also alleges

that defendant Remi Acosta, the Warden at Enfield, transferred him to another correctional

facility in retaliation for filing grievances.  The Defendants have filed a motion for summary

judgment.  For the reasons that follow, the motion for summary judgment is granted.

I.      Standard of Review

        In considering a motion for summary judgment, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is entitled to

judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).

A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with affidavits, if any, show that there is no genuine issue as to

any material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).

A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

To defeat a motion for summary judgment that is supported by documentary evidence and sworn affidavits, a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). He "must come forward with enough evidence to support a jury verdict in [his] favor, and the motion will not be defeated merely . . . on the basis of conjecture or surmise." Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir.1992) (citation and internal quotation marks omitted).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion,"

unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Facts[1]

On July 23, 2001, Dunkley arrived at Enfield after his transfer there from another Connecticut Corrections facility.   Two days later, five boxes of Dunkley's legal materials concerning the fourteen pro se civil cases Dunkley had filed reached Enfield.  Defendant Rodwell, the property officer, did not give Dunkley all of his boxes of legal materials at that time.

On August 1, 2001, Dunkley attended a hearing on a habeas corpus petition in the Connecticut Superior Court seeking medical care for what Dunkley believed was a cancerous tumor.  Although Dunkley did not have all of his legal materials concerning that case, the judge ordered the Connecticut Corrections Department to provide a medical examination to Dunkley and whatever medical services were appropriate.  At the hearing, Dunkley conceded that he did not need his legal materials for that hearing.

On August 3, 2001, Dunkley filed a grievance regarding the denial of access to his legal papers by defendant Rodwell and the loss of various items of personal property.  He also asked the grievance coordinator to reimburse him for his lost property, namely food and cosmetics with a value of one hundred dollars.

---

[1] The facts are taken from defendants' Local Rule 56(a)1 statement [doc. #41], the exhibits attached to defendants' memorandum in support of the motion for summary judgment [doc. #40], plaintiff's Local Rule 56(a)2 statement [doc. #55] and the exhibits attached to the amended complaint [doc. #31].

On August 21, 2001, Dunkley attended a hearing in Small Claims Court in New Haven. He claims that he did not have the necessary legal papers because of Rodwell's actions. After the hearing, the court ruled against Dunkley.[2]

Dunkley also claims that Rodwell lost or destroyed a draft of a brief to be filed in the Connecticut Appellate Court in a different matter, and that appeal was dismissed because of his failure to file the brief.

On August 29, 2001, Dunkley was transferred from Enfield to the Carl Robinson Correctional Institution, also in Enfield, Connecticut.

III.    Discussion

The Defendants assert five grounds in support of their motion for summary judgment: (1) Dunkley fails to state a claim for denial of access to the courts, (2) Dunkley's deprivation of property claim is legally insufficient, (3) Dunkley failed to exhaust his administrative remedies with regard to his retaliation claim, (4) there are no material issues of fact regarding Dunkley's retaliation claim and (5) Dunkley's claims against the defendants in their official capacities are barred.

    A.    Denial of Access to Courts

Dunkley contends that defendant Rodwell denied him access to the courts by refusing to give him all of his boxes of legal materials. The defendants argue that Dunkley has not shown the type of injury required to state a claim for denial of access to the courts.

_____

[2]That matter was against a defendant named Richard Silverstein. The nature of it has not been completely described by Dunkley, although Silverstein is an attorney who previously represented Dunkley in the criminal case which resulted in his incarceration, and the small claims matter concerned a dispute over legal fees.

In <u>Lewis v. Casey</u>, 518 U.S. 343 (1996), the Supreme Court clarified an inmate's right of access to the courts and standing to bring a claim for the violation of that right. The Court held that an inmate must allege facts demonstrating an actual injury stemming from the defendants' unconstitutional conduct. <u>See id.</u> at 349. As an illustration, the Court noted if an inmate were able to show that he was unable to file an initial complaint or petition, or the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim, that would be sufficient. <u>See id.</u> at 351. The Court, however, specifically rejected any requirement that prison officials ensure that inmates have sufficient resources to discover grievances or litigate effectively once their claims are brought before the court. <u>See id.</u> at 355.

The required actual injury cannot derive from "just any type of frustrated legal claim." <u>Id.</u> at 354. Inmates must be afforded access to court to file a direct appeal, a petition for writ of habeas corpus or a civil rights action challenging the denial of a basic constitutional right. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Id.</u> at 355.

Dunkley specifically references difficulties litigating three cases. The first case was the state habeas action regarding medical care. The portion of the transcript of the August 1, 2001 hearing in the Connecticut Superior Court attached to Dunkley's opposition papers reveals that Dunkley received the relief he sought and he did not need any additional materials for that hearing. (<u>See</u> Pl.'s Local Rule 56(a)2 Statement, transcript at 4-5.) Thus, even if defendant Rodwell failed to provide him the legal materials he requested, it is undisputed that Dunkley did not suffer any injury.

5

The second case was a small claims proceeding in state court. This proceeding is not the type of case contemplated by the Supreme Court in <u>Lewis</u> as implicating a constitutional right to access to the courts. In addition, Dunkley has not provided any evidence regarding why the case was decided against him. Thus, even if the small claims action could support a claim of denial of access to the courts, Dunkley has not met his burden of raising a genuine issue of material fact that defendant Rodwell's actions caused the result contrary to Dunkley's interests.

The third case was an appeal before the Connecticut Appellate Court. Dunkley claims that Rodwell destroyed a draft of his appellate brief and other related papers. The court cannot tell from the evidence provided by Dunkley whether this action is of the type contemplated in <u>Lewis</u>. Further, Dunkley has provided a statement indicating that the appeal was dismissed because he did not file his required papers by September 26, 2001. This date is approximately one month after Dunkley was transferred from Enfield. Another notice from the Appellate Court attached to Dunkley's opposition papers indicates that Dunkley's submission to the Connecticut Appellate Court of those papers was initially due on July 9, 2001, several weeks before his transfer to Enfield. Dunkley does not address why he did not file his papers before he arrived at Enfield Correctional Institution or during the month after his transfer out of Enfield, or whether the lost draft was essential to the required filing. Finally, the papers that were required to be filed by Dunkley were his "preliminary designation of pleadings" and "certificate re: transcript", not his appellate brief. The failure to file those papers caused the dismissal of his appeal. Surely, Dunkley could have made that filing even if he is to be credited that Rodwell destroyed a draft of them.

Because Dunkley has not demonstrated that the second and third claims are of the types referenced in Lewis, he has not stated claims for denial of access to the courts. [3]

     B.      <u>Deprivation of Property</u>

Dunkley also argues that defendant Rodwell lost or took items of his personal property, including clothing, groceries and toiletries, valued at approximately $100. The defendants contend that Dunkley's claim is not cognizable under 42 U.S.C. § 1983.

The Supreme Court has found that the Due Process Clause is not violated where a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers, if the state provides an adequate post-deprivation compensatory remedy. <u>Hudson v. Palmer</u>, 468 U.S. 517, 531 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527, 543 (1981). The State of Connecticut provides an adequate remedy for the kind of deprivation that Dunkley sets forth through an application to the Claims Commissioner of the State of Connecticut. <u>See</u> Conn. Gen. Stat. § 4-141 <u>et seq.</u> This state remedy is not rendered inadequate simply because the plaintiff anticipates a more favorable remedy under the federal system or that it may take a longer time under the state system before his case is resolved. <u>See Hudson v. Palmer</u>, 468 U.S. at 535. Thus, it is not enough for Dunkley to show that his property was lost or destroyed. He also must show that he has been denied due process of law, i.e., that he was denied an opportunity to attempt to redress this alleged wrong through legal procedures. <u>See Aziz Zarif Shabazz v. Pico</u>, 994 F. Supp. 460, 473 (S.D.N.Y. 1998).

_____

[3]Although Dunkley refers to other cases, he includes no evidence suggesting that he was unable to file these cases or that they were dismissed as technically deficient. Thus, Dunkley has provided no evidence to support a claim for denial of access to the courts in connection with the other cases.

Dunkley has not presented any evidence suggesting that the opportunity to present his claim to the Claims Commissioner is insufficient to redress his loss. Thus, the court concludes that Dunkley has not been deprived of property without due process of law and his claim lacks an arguable basis in law and fact.

C.    Retaliatory Transfer

Finally, Dunkley alleges that he was transferred from Enfield in retaliation for filing grievances regarding his problems with defendant Rodwell. The defendants contend that Dunkley failed to exhaust his administrative remedies with regard to this claim because he did not file a grievance regarding it. In response, Dunkley concedes that he did not file such a grievance.[4]

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 992 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741 (2001).

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances. During the relevant time period, section 6(A) provided that the following matters were grievable:

---

[4] Dunkley stated that although he spoke to Warden Acosta about his "problems with Rodwell," he did not file a grievance about the transfer because it was "void." However, as indicated infra in the text, such an issue was grievable.

1.  The interpretation and application of policies, rules and procedures of the unit, division and Department.

2.  The existence or substance of policies, rules and procedure of the unit, division and Department . . . .

3.  Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.

4.  Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.

5.  Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.

6.  Property loss or damage.

Dunkley's retaliation claim is included within the list of grievable matters at items 3, 4 and 5. Thus, Dunkley was required to fully exhaust his administrative remedies for this claim before he filed this action. Because Dunkley concedes that he did not file a grievance regarding the allegedly retaliatory transfer, he has not satisfied the exhaustion requirement.

Finally, a prisoner has no constitutional right to be incarcerated in a particular institution. See Meachum v. Fano, 427 U.S. 215, 225-28 (1976) (transfer of an inmate from one correctional facility to another, without more, does not violate the inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules."; Olim v. Wakinekona, 461 U.S. 238, 248 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state). Prison officials have absolute discretion in determining where an inmate will be incarcerated. See Conn. Gen. Stat. § 18-86; Cofone v. Manson, 594 F.2d 934, 938 (2d cir. 1979) (court held that inmate has no justifiable right or expectation based on Connecticut law that he would not be transferred to another correctional

9

institution); <u>Montanye v. Haynes</u>, 42 U.S. 236, 242-43 (1976) (state prisoners have no

protectable liberty interest in original or preferred place of confinement in light of unfettered

discretion of state prison officials); <u>Meriwether v. Coughlin</u>, 879 F.2d 1037, 1047 (2d Cir. 1989)

("It is well established that the transfer of prisoner from one institution to another does not

invoke protection from the due process clause").[5]

IV.     <u>Conclusion</u>

     Defendants' Motion for Summary Judgment [**doc. #39**] is **GRANTED**.  The Clerk is

directed to enter judgment in favor of the defendants and close this case.

     **SO ORDERED** in Hartford, Connecticut, this  17th  day of September, 2004.


       /s/ CFD
       CHRISTOPHER F. DRONEY
       UNITED STATES DISTRICT JUDGE

---

[5]The Defendants' argument concerning "official capacity" need not be addressed.